

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No. 18cr 10203 |
| | ) | |
| | ) | **VIOLATIONS:** |
| **v.** | ) | |
| | ) | **Embezzlement from an Agency** |
| | ) | **Receiving Federal Funds** |
| **GREGORY RAFTERY,** | ) | **(18 U.S.C. § 666(a)(1)(A))** |
| | ) | |
| **Defendant.** | ) | **Aiding and Abetting** |
| | ) | **(18 U.S.C. § 2)** |
| | ) | |
| | ) | **Forfeiture Allegation** |
| | ) | **(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.** |
| | ) | **§ 2461(c))** |

**INFORMATION**

The United States Attorney charges that:

**General Allegations**

1. At all times relevant to this Information:

    a. Troop E was an operational division of the Massachusetts State Police ("MSP"), the state-wide law enforcement agency for the Commonwealth of Massachusetts. Among other duties, Troop E was primarily responsible for enforcing criminal law and traffic regulations on Interstate-90, the Massachusetts Turnpike ("I-90"), which spans the Massachusetts/New York border to the Boston Harbor. Troop E headquarters was located in South Boston, and additional Troopers within Troop E were stationed at four barracks located in Weston, Charlton, Westfield, and near the Boston Tunnels.

    b. In addition to salary for a regular 8-hour work shift, Troopers within Troop E were also able to earn hourly overtime pay equivalent to 1.5 times their regular

hourly pay rate for various overtime assignments. Beginning by at least January 2015, Troop E Troopers could earn overtime pay by signing up for and working a selective enforcement initiative known as the "AIRE" (Accident and Injury Reduction Effort). The objective of the AIRE program was to reduce accidents, crashes, and injuries on I-90 through an enhanced presence of MSP Troopers patrolling I-90 and targeting vehicles traveling at excessive speeds.

c.      All AIRE shifts were four hours long and were organized by letter according to a specific shift: A-AIRE from 7:30 a.m. to 11:30 a.m.; B-AIRE from 11:00 a.m. to 3:00 p.m.; C-AIRE from 3:30 p.m. to 7:30 p.m.; and D-AIRE for 7:00 p.m. to 11:00 p.m. Before working a 4-hour AIRE assignment Troopers were generally required to either work a full 8-hour regular shift, use accrued leave hours, or a combination of both to equal eight hours. Prior to each AIRE shift, Troopers were deployed to a particular sector of I-90.

d.      To earn AIRE overtime pay, Troopers were required to work the duration of the 4-hour AIRE shift and conduct traffic enforcement on I-90 by issuing summonses, citations, and warnings during the shift. In the event that inclement weather rendered Turnpike traffic stops unsafe during an AIRE shift, Troopers were to contact the Troop E desk officer in order to be re-deployed to another sector, if necessary.

e.      As part of the AIRE shift duties, Troopers were required to truthfully and accurately report, among other things, the date and time of the shift worked, the sector of deployment, and the traffic citations issued during the AIRE shift.

2

### The MSP Received Federal Funds

2.      The United States Department of Transportation ("DOT") was an agency of the United States that provided hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities that enforce traffic regulations on public roadways, including the MSP.

3.      For each of the calendar years 2015 and 2016, the MSP received annual benefits from the DOT in excess of $10,000, which were funded by the DOT pursuant to numerous federal grants.

### The Defendant

4.      From in or about 2012 to 2017, GREGORY RAFTERY ("RAFTERY") was an MSP Trooper assigned to Troop E.   In or about 2016, RAFTERY's total MSP compensation was approximately $219,669, which included approximately $87,607 in overtime pay, a portion of which included pay for AIRE overtime shifts.   In or about 2015, RAFTERY's total MSP compensation was approximately $202,769, which included approximately $82,514 in overtime pay, a portion of which included pay for AIRE overtime shifts.

5.      As an MSP Trooper in Troop E, RAFTERY regularly received Troop E memorandums, policies, and protocols that instructed Troop E personnel as to AIRE assignment requirements, including the 4-hour AIRE shift duration requirement and paperwork reporting responsibilities.

### The Defendant's Fraud Scheme

6.      In or about 2015, RAFTERY signed up for and received overtime pay for more than 140 AIRE overtime shifts.   In or about 2016, RAFTERY signed up for and received

overtime pay for more than 150 AIRE overtime shifts.    On a regular basis during this period, RAFTERY purposefully departed his AIRE overtime shift from one to three hours early and thus did not work the entire 4-hour shift.    On several occasions, RAFTERY signed up for and received AIRE overtime pay without showing up to work for the given AIRE shift at all.

7.    In order to conceal the fraud, RAFTERY submitted fraudulent traffic citations for traffic stops that never took place.    To obtain information for these bogus citations, RAFTERY used an MSP law enforcement computer database to obtain Registry of Motor Vehicle driver information.    RAFTERY fabricated fraudulent traffic citations to create the appearance that he had (i) worked a 4-hour AIRE shift; and (ii) made traffic stops and issued traffic citations during a given AIRE overtime shift, when, in fact, he had not.

8.    In addition to AIRE overtime, RAFTERY abused other Troop E overtime programs, which had work-hour and reporting requirements similar to AIRE.    In these instances, RAFTERY left early or did not show up for these overtime shifts but would submit paperwork claiming to have worked the entire shift.

9.    From at least as early as in or about 2015 through in or about 2016, during a continuous twelve-month period therein, RAFTERY caused the MSP to pay in excess of $5,000 in AIRE and other overtime pay to RAFTERY via direct deposit for AIRE and other overtime hours that RAFTERY did not actually work.

4

## COUNT ONE

(Embezzlement from an Agency Receiving Federal Funds –
18 U.S.C. §§ 666(a)(1)(A) and 2)

10.     Paragraphs 1 through 9 are incorporated by reference herein.

11.     From in or about January 2015 to in or about December 2016, in the

District of Massachusetts and elsewhere, the defendant,

### GREGORY RAFTERY

being an agent of an organization, namely, the MSP, embezzled, stole, obtained by fraud and

otherwise without authority knowingly converted to the use of a person other than the rightful

owner and intentionally misapplied, property valued at $5,000 or more, which included labor,

services, funds, and other goods, that was owned by, and was under the care, custody, and

control of such organization, the MSP, that received in excess of $10,000 in federal program

benefits, funded by DOT, in any one-year period between in or about January 2015 and in or

about December 2016.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

1.    Upon conviction of the offense charged in Count One of this Information, the defendant,

### GREGORY RAFTERY

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense.

2.    If any of the property described in paragraph 1 hereof as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant --

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred to, sold to, or deposited with a third party;

     c.    has been placed beyond the jurisdiction of this Court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:     _____
        Dustin Chao
        Mark Grady
        Neil Gallagher
        Assistant U.S. Attorneys